## Hall's Adm'r v. Hall's Ex'r et al.

(Decided May 29, 1936.)

WALLACE BROWN and ANDREW W. NICHOLS for appellants.
RALPH GILBERT, BERNARD DAVIS and JOHN K. TODD for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

In a suit to settle the estate of Woodford Hall, the appellants (devisees of Emma H. Hall and the administrator de bonis non with will annexed of her estate) sought to recover of the executor of Woodford Hall $15,000; they recovered $898.87 only, and they have appealed.

Emma H. Hall died January 12, 1922, leaving a will by which she gave her husband, Woodford Hall a life estate in her property, and named him as her executor. She devised the remainder after his life estate to the appellants.

Woodford Hall qualified as such executor, and on April 30, 1922, made an inventory as required by section 3855, Ky. Stats., which was recorded in the clerk's office of the Nelson county court in Book 8, p. 289. He had to file an inventory. Section 3857, Ky. Stats. On July 6, 1923, Woodford Hall filed his settlement of the estate of Emma H. Hall, showing a balance that he held for life of $898.87. He had to settle (see section 3858, Ky. Stats.), and it had to be recorded (sections 403, 1607 and 3858, Ky. Stats.). On November 10, 1931, Woodford Hall died leaving a will, and E. B. Smith became his executor, and on August 11, 1932, he filed this action to settle Woodford Hall's estate.

The appellants on February 13, 1933, filed answers and counterclaims, the purpose of which was to avoid and surcharge the settlement filed July 6, 1923, and to show there came to the hands of Woodford Hall, as executor of Emma H. Hall, net, after paying her debts, more than $15,000.

By reply Smith, as executor of Woodford Hall, denied Woodford Hall received $15,000 or any other sum in excess of $898.87, and then he pleaded the 5-year and the 7-year statutes of limitations. This appellants traversed in their rejoinder, and then in a second paragraph pleaded they did not discover, and could not by reasonable diligence have discovered, the fraud until within 5 years before the commencement of this action. By agreement this was controverted of record.

### The Tender.

Smith, as executor of Woodford Hall, on October 25, 1933, tendered to the appellants through their attorney $898.87 in full settlement of everything due appellants, and this they refused to so accept, but offered to accept same as part payment, which Smith refused.

### Our Conclusion.

The record is in great confusion, much of it deals with checks, advances, etc., made more than 50 years ago. For example, it is shown that previous to January 18, 1883, Mrs. Hall's father had advanced to her $3,-526.57; she received under the will of her father $1,-603.93, which was paid her before August 13, 1884. These two items aggregate $5,130.50. This was before the effective date of the Weissinger Act, June 11, 1894 (Ky. Stats. secs. 2127-2148), and the personal property of the wife then belonged to her husband. See Thompson's Adm'x v. Elam's Ex'x, 12 S. W. 1134, 1135, 11 Ky. Law Rep. 455, where we said:

> "The plea that Williams signed the receipts without authority will not avail. * * * Williams * * * as to his wife, had the full power, as a matter of law, to receive the money."

Where a husband and wife were married prior to June 11, 1894, he acquired absolute title to her personal property which he reduced to possession prior to that date and the right to receive the rents and profits of her

real estate so previously acquired. Fowler v. Fowler, 138 Ky. 326, 127 S. W. 1014.

In McKay v. Mayes et al., 29 S. W. 327, 329, 16 Ky. Law Rep. 862, we said:

"If choses in action accrue to her while she is covert, they vest absolutely and eo instanti in her husband, because she has no legal capacity to take in her own right during coverture."

Thus we see that much of the money and notes which the appellants propose to count and to treat as constituent parts of, yea the very basis of, the estate they fancy they have found, really belonged to Woodford Hall under the law as it then was, for Mr. Hall reduced all of it to possession, it was placed in the bank to his credit, and by him checked out and handled as his own. After the passage of the Weissinger Act, Mrs. Hall inherited $4,915 in 1900. She had 22 years in which to spend that or give it away. She inherited $400 in 1909 and had 13 years in which to get rid of that.

Mrs. Hall had a perfect right to give him any money which came to her after June 11, 1894, and how much she did give we know not, but, if appellants had made timely effort to surcharge this settlement and begun their efforts during the lifetime of Woodford Hall, that old man might have produced checks, letters, and writings of Emma H. Hall fully substantiating and establishing the correctness of the settlement he made. This belated effort, this post mortem attack, does not appeal to us.

This case cannot be distinguished from Wren's Ex'r v. Wren's Ex'x, 126 Ky. 704, 104 S. W. 737, 31 Ky. Law Rep. 1096. In that case the widow of James W. Wren was both life tenant and executrix, and her settlement was attacked 10 years, 7 months, and 24 days after it was recorded. It was held to be too late, and that decision was rested upon section 2522, Ky. Stats. (the 10-year statute), but it was not there held that it might not have been rested on section 2515, Ky. Stats. (the 5-year statute), or section 2529, Ky. Stats. (the 7-year statute). The attack upon the settlement in this case was made 9 years, 7 months, and 7 days after it was made.

If Woodford Hall, when he made this settlement, had any funds belonging to Emma H. Hall other than

the $898.87 reported by him (which is quite improbable), and he innocently failed to include and report it, that was a mistake on his part, and, if he had such funds, and knowingly concealed and failed to report them, that was a fraud on his part. So, if he had funds belonging to his wife's estate for which he did not account in this settlement, that was either a fraud or a mistake, and this settlement can be attacked for either, but when?

In the Wren Case we held the cause of action to surcharge the settlement arose when the settlement was made; then in this case appellant's cause of action arose July 6, 1923. Appellants should have begun their attack previous to July 6, 1928. We are fully aware that by the provisions of section 2519, Ky. Stats., it is provided that the cause of action does not accrue until the fraud or mistake is discovered. In applying this statute, we have uniformly held that ordinary diligence must be exercised to make discovery, and that a belated discovery will not be excused where ordinary diligence would have resulted in an earlier discovery. Where the facts are disclosed by a public record, which is required to be kept and no examination is made of it, that is not the exercise of ordinary diligence. Appellants had pleaded they could not have made this discovery by the exercise of ordinary diligence, but the record fails to show any evidence in support of that plea. They say now in their reply brief:

"There is no provision of law where a life tenant is even authorized to make a settlement or even file any inventory or appraisement in any court, therefore anything he thus files could not act as any bar or estoppel to the remaindermen. There being no statutory authority for settlement by a life tenant, a life tenant could file an affidavit or a settlement in County Court every month for forty years and the remainderman would not be bound to even notice it."

They overlook the fact that Woodford Hall was both life tenant and executor. As life tenant he was not required to file a settlement, but as executor he was, and appellants are charged with notice of it. They have waited too long.

Appellants also insist they are not suing the executor of the estate of Emma H. Hall, but are suing the

executor of Woodford Hall to recover money and property belonging to Emma H. Hall that Woodford Hall concealed and kept until he died, and which then passed into the hands of Smith as his executor.

A remainderman takes personal property from the testator, through the executor and after the life tenant. He does not take either from or through the life tenant.

If personal property, the use of which consists in its consumption, be given for life, as corn, wheat, fodder, oats, chickens, or fat hogs, the life tenant takes that absolutely, but the rule is different as to money. See Davison's Adm'r v. Davison's Adm'x, 149 Ky. 571, 149 S. W. 982, 21 C. J. p. 1040, sec. 245, but that only brings us back to the former question. How much money or choses in action did he get? That must be determined by this settlement.

If Woodford Hall took as his own any money or property belonging to Emma H. Hall, that conversion was complete when he filed this settlement, and appellants should have sued then. They did not, and on July 6, 1928, the curtain went down forever. See Coffey v. Wilkerson, 58 Ky. (1 Metc.) 101.

Judgment affirmed.